United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

SAMANTHA ELIZABETH BIDAD,

  Plaintiff,

  v.

CAROLYN W. COLVIN,

  Defendants.

Case No. 12-cv-06384-NJV

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Re: Dkt. Nos. 20, 21

## INTRODUCTION

Samantha Elizabeth Bidad ("Plaintiff") underwent surgery to excise a cyst from her neck in 2005. *See* Administrative Record ("AR") 168-70. Alleging that residual effects from the surgery prevented her from working, she applied for Supplemental Security Income ("SSI") benefits. AR 168-171. Her application was denied initially by the Social Security Administration ("SSA") and on reconsideration. She requested a hearing before an administrative law judge ("ALJ"). The ALJ found Plaintiff could perform light work, with some limitations, including her past relevant work as a cashier; she thus denied Plaintiff's application. AR 23-32. Plaintiff requested review from the Commissioner of Social Security's Appeals Council. The Appeals Council denied Plaintiff's request (AR 5-8), making the ALJ's decision the final decision of the Commissioner.

Pursuant to the Social Security Act, this Court has subject matter jurisdiction over a final decision by the Commissioner. *See* 42 U.S.C. §§ 405(g), 1383(c); *Bass v. Soc. Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989). Both parties consented to this Court's jurisdiction. Doc. Nos. 6,

1   12.

2         Before the Court is Plaintiff's motion for summary judgment and Defendant's cross-

3   motion for summary judgment.  Doc. Nos. 20, 21.  Plaintiff asks the Court to remand the case "for

4   a new hearing and proper consideration of the evidence as a whole."  Doc. No. 20 at 8.  The sole

5   issue to be decided is whether the ALJ erred in giving limited weight to the opinion of a nurse

6   practitioner who opined that Plaintiff suffered from limitations greater than the limitations the ALJ

7   determined applied.[1]  For the reasons stated below, the Court denies Plaintiff's motion for

8   summary judgment and grants Defendant's cross-motion for summary judgment.

9                                    **LEGAL STANDARD**

10        A district court has a limited scope of review of an ALJ's decision denying Social Security

11  benefits and can only set aside a denial of benefits if it is not supported by substantial evidence or

12  if it is based on legal error.  *Flaten v. Sec'y of HHS*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The

13  Commissioner's findings "as to any fact, if supported by substantial evidence, shall be

14  conclusive."  42 U.S.C. § 405(g).  Substantial evidence is "more than a mere scintilla but less than

15  a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

16  support a conclusion."  *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997).  "In determining

17  whether the Commissioner's findings are supported by substantial evidence," a district court must

18  review the administrative record as a whole, considering "both the evidence that supports and the

19  evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715,

20  720 (9th Cir. 1998).  The Commissioner's conclusion is upheld where the evidence is susceptible

21  to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  If

22  the evidence can support either outcome, the Court may not substitute its judgment for that of the

23  ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

24                                      **DISCUSSION**

25

26

27  ─────────────────
[1] Plaintiff initially raised a second argument relating to the consultative examiner's report. *See*

28  Doc. No. 20 at 9.  She conceded that this argument lacked merit in her reply (Doc. No. 22 at 3)
    and the Court will not address it further.

United States District Court
Northern District of California

**A. Plaintiff's limitations.**

In 2005, a large cyst was excised from Plaintiff's neck. AR 25. Following the operation, Plaintiff complained of neck pain so severe that she could not work. AR 208. Plaintiff's primary care physician at the time was a nurse practitioner, Nancy Foster.

In April 2011, Nurse Foster completed a Cervical Spine Residual Functional Capacity Questionnaire to support Plaintiff's SSI application. Nurse Foster indicated that she had treated Plaintiff "every 1-2 [months] for the past 5 years" for neck pain. AR 522. Nurse Foster noted that Plaintiff experienced pain in the right side of her neck, radiating to her right arm. *Id.* She described the pain as "moderately severe," and as being precipitated by use of the right arm. *Id.* She opined that Plaintiff had significant limitation of motion, and that for each 8-hour work day, was limited to 4 hours each of extension and of flexion; 1 hour of rotation each on the right and left side; and 1 hour of lateral bending each on the right and left side. *Id.*; *see also* AR 525 (Plaintiff can only "rarely" turn head right or left, and only occasionally look up, look down, or hold her head in a static position). Treatment with physical therapy, muscle relaxers and pain medication was met with a "fair" response, but Nurse Foster expected Plaintiff's condition to last at least 12 months. AR 523. She opined that Plaintiff's pain and other symptoms would "frequently" interfere with her attention and concentration (meaning between 34% and 66% of an 8-hour work-day). AR 524. Nurse Foster noted that Plaintiff could not walk more than 2-3 city blocks without resting or severe pain, could only sit 2 hours at one time and stand 30 minutes at one time; that she could stand at most 2 hours and sit for at least 6 hours during a regular work day; and that she needed to walk for at least 3 minutes every 90 minutes during a regular work day. AR 524-25. She believed that Plaintiff would need to take unscheduled 10-minute breaks from work every two hours in order to rest her head on a high back chair. AR 525. Finally, Nurse Foster opined that Plaintiff would likely be absent from work 3 or more days per month due to her impairments. AR 526.

The limitations Nurse Foster found are more severe than those found by the consultative examiners who evaluated Plaintiff. Dr. S. Amon, a medical consultant hired by the SSA, completed a Physical Residual Functional Capacity Assessment in May 2010 after reviewing

United States District Court
Northern District of California

1    Plaintiff's medical files.  AR 363-67.  He found that Plaintiff could frequently lift 10 pounds and

2    occasionally lift 20 pounds; could stand or sit each for a total of about 6 hours in a regular work

3    day with normal breaks; and had no postural limitations.  AR 364.  In April 2011, Dr. C. Frieser

4    conducted a consultative neurological evaluation of Plaintiff at the behest of the SSA.  AR 355-

5    359.  He diagnosed "chronic neck pain" but found "no appreciable tenderness to palpation and no

6    palpable spasm. . . .  There was no objective evidence of cervical radiculopathy."  AR 359.  He

7    found that Plaintiff had no limitations in standing, walking and sitting, with normal breaks.  Based

8    on his examination, he observed a full range of motion of the cervical spine, with persistent neck

9    pain.  AR 359.  He limited the amount of weight Plaintiff could carry to less than 10 pounds

10   frequently and 10 pounds occasionally.  AR 359.

11   **B.  The ALJ's evaluation of Plaintiff's limitations.**

12           The ALJ found that Plaintiff had several severe impairments: "status post excision of a

13   cystic hygroma; neck pain, headaches and a mood disorder."  AR 25.[2]  The ALJ found that these

14   impairments "significantly limit" Plaintiff's ability to perform work-related activities.  Because

15   there was no evidence of "gross anatomical deformity, bony destruction or reflex, motor or

16   sensory loss," the ALJ found that Plaintiff did not have a listed impairment or a combination of

17   impairments that met or medically equaled a listed impairment.  AR 25.  Based on the evidence in

18   the record, including Plaintiff's testimony and her medical records, the ALJ found that Plaintiff

19   was limited to "less than a full range of light work in view of her chronic pain syndrome."  AR 27.

20   The ALJ reviewed the diagnostic evidence and concluded that a December 2009 CT scan was

21   negative and that Plaintiff's neck was described as supple without adenopathy at that time.  AR

22   28.  The ALJ placed great weight on the opinions of a number of medical professionals, including

23   the consultative examiners, and "little weight" on Nurse Foster's opinion.  The ALJ discounted

24   Nurse Foster's opinion because the opinion was not that of a "qualified medical source" and

25   because "the balance of the substantial evidence fails to support the limitations assessed by the

26   _____

27   [2] Plaintiff does not challenge the ALJ's findings regarding her mental impairments or any other
     physical impairment; she does not challenge the ALJ's finding that her neck pain did not meet or
28   equal a listed impairment; she does not challenge the ALJ's partial rejection of her pain and
     symptoms testimony; she also does not challenge the ALJ's evaluation of her credibility.

4

nurse practitioner." AR 30.  (Although the ALJ also noted a discrepancy between Nurse Foster's opinion and other evidence in the record, she did not cite the discrepancy as a basis for discounting Nurse Foster's opinion.  AR 29-30.)

The ALJ also rejected the extent of Plaintiff's symptoms testimony because it was not supported by objective medical evidence, Plaintiff engaged in a broad level of activities, and she made internally inconsistent admissions.  AR 27.

Based on the evidence before her, the ALJ found that Plaintiff could perform light work, except that she was limited to simple, routine work with a sit/stand option.  AR 26.

### C.  Analysis.

**1.  Nurse Foster is not an "acceptable medical source" and thus cannot be considered a treating source whose medical opinion is entitled to controlling weight.**

The ALJ must review all relevant evidence in the record.  20 C.F.R. § 927(b).  However, not all evidence in the record is weighed equally.  Only an "acceptable medical source" may establish the existence of a severe impairment, provide a medical opinion, or be considered a treating source whose medical opinion could be entitled to controlling weight under the "Treating Physician Rule."[3]  *See* 20 C.F.R. § 416.913; *see also Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p, 2006 SSR LEXIS 5 (reprinted at 2006 SSR LEXIS 5, at *1 (SSA Aug. 9, 2006)).  As applicable to this case, an "acceptable medical source" is defined as a licensed physician.  20 C.F.R. § 416.913(a)(1).  By definition, a nurse practitioner such as Nurse Foster is not an "acceptable medical source."  *Id*.  The opinions of a nurse practitioner fall within the category of information provided by "other sources."  SSR 06-3p, 2006 SSR LEXIS 5, at *5; *see* 20 C.F.R. § 416.913(d).  Social security regulations only require that information from "other sources" be "considered."  2006 SSR LEXIS 5, at *17 (citing 20 C.F.R. §§ 404.1512, .1527, 416.912, .927)).  The ALJ "considered" Nurse Foster's opinion, and ultimately accorded it "little weight."  *See* AR

---

[3] A treating physician's opinion is given special weight because she is employed to cure and has a greater opportunity to observe the claimant's physical condition.  *See Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    28-30.  Plaintiff argues that the ALJ erred in so weighing Nurse Foster's opinion.

2         Under Ninth Circuit precedent, an ALJ may properly treat a nurse practitioner or

3    physician's assistant working closely under the supervision of a licensed physician as an

4    acceptable medical source.  *See Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); *Taylor v.*

5    *Astrue*, 659 F.3d 1228, 1234 (9th Cir. 2011) (a nurse practitioner may be considered an

6    "acceptable medical source" for purposes of providing a medical opinion in a social security

7    disability case "to the extent" the nurse practitioner works "closely with, and under the supervision

8    of" a licensed physician); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (affirming ALJ

9    decision not to consider the opinion of a physician's assistant as an acceptable medical source

10   because "the record [did] not show that she worked under a physician's close supervision").

11   Because the Court did not find evidence in the record establishing that Nurse Foster worked

12   closely with and was supervised by a licensed physician, the Court ordered Plaintiff to file further

13   briefing "identifying evidence in the record that Nurse Foster worked closely with, and was

14   supervised by, an acceptable medical source."  Doc. No. 23 at 2.  Instead of providing the requeste

15   evidence, Plaintiff responded by arguing that under California law, "a nurse practitioner is not

16   prohibited from furnishing or ordering drugs when [doing so] under physician and surgeon

17   supervision."  Doc. No. 26 at 2.  Conceding that "no physician's signature appears on Nurse

18   Foster's reports," she nonetheless argued that "the law implies that Nurse Foster worked under the

19   supervision of a physician."  *Id*.  Plaintiff does not identify the evidence, as requested by the

20   Court, that Nurse Foster was indeed supervised by a licensed physician at the time she evaluated

21   and treated Plaintiff.  Without evidence in the record that Nurse Foster was closely supervised by a

22   licensed physician when she treated Plaintiff, Nurse Foster cannot be considered an "acceptable

23   medical source."  *See supra*.

24        **2.  Nurse Foster is an "other source" whose opinion the ALJ "may" consider to
            evaluate the severity of Plaintiff's symptoms.**
25
          Although Nurse Foster was not an "acceptable medical source," the ALJ "may" consider
26
     Nurse Foster's opinion to evaluate the severity of Plaintiff's symptoms and gain insight into how
27

28

                                                  6

United States District Court
Northern District of California

the conditions limit her ability to function. SSR 06-3p, 2006 SSR LEXIS 5, at *4.[4] In fact, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." *Id.* The "factors for weighing opinion evidence" include how long the source has known and seen the claimant; how consistent the source's opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion and whether the source has an area of expertise related to the claimant's impairment. *Id.*, at *11-*12. Thus, "it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." *Id.*, at *13.

Plaintiff contends that "the longitudinal history of over 5 years of treatment by Nurse Foster supports assigning her great weight" (Doc. No. 20 at 7), but she fails to address the remaining factors relevant to weighing opinion evidence. The remaining factors weigh against her. The ALJ found that Nurse Foster's opinion regarding Plaintiff's limitations was not consistent with the rest of the record. AR 30. In support of that finding, the ALJ relied on the opinions of the Dr. Fieser and Dr. Amon, neither of whom found that there were significant limitations in Plaintiff's ability to perform standing, walking and sitting; the "essentially unremarkable" medical records; the lack of objective support in the record; and Plaintiff's admitted level of activity. AR 30. In her motion for summary judgment, Plaintiff fails to identify objective evidence supporting Nurse Foster's opinion that Plaintiff has severe limitations in

---

[4] The SSA recognizes the realities of modern medicine, and the unfair burden this rule would place upon claimants who are only treated by "other sources": "With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-3p, 2006 SSR LEXIS 5, at *8.

standing and walking and has postural limitations due to neck pain.  Instead, Plaintiff cites

evidence that she consistently reported neck pain to Nurse Foster between 2009 and 2011; and that

on two occasions, Nurse Foster observed limited range of motion in Plaintiff's neck.  *See* AR 352

(March 2010), 361-62 (May 2010).  Nurse Foster did not report observing a limited range of

motion at any other time.  *See* AR 405 (neck "supple" with tenderness and palpable spasm in

October 2009), 386 (describing neck as "supple" and having full range of motion in January

2010), 414 (neck supple and non-tender in July 2010), 492 (in March 2011, neck supple), 495 (in

January 2011, neck supple).  As described above, the ALJ limited Plaintiff to less than the full

range of light work based on her reported chronic pain.  AR 27.  She thus accepted Nurse Foster's

opinion (and that of other sources, including Plaintiff), that Plaintiff suffered from and was limited

by this condition.  The evidence Plaintiff cites does not contradict the ALJ's findings.  Finally,

Nurse Foster's Cervical Spine Residual Functional Capacity Questionnaire is not supported by

relevant evidence, nor does Nurse Foster explain her opinion of Plaintiff's limitations.  The record

does not establish whether Nurse Foster has expertise in a relevant area.

     The ALJ considered Nurse Foster's opinion when determining the severity of Plaintiff's

impairments, but found that "the balance of the substantial evidence fails to support the limitations

assessed by the nurse practitioner."  AR 30.  That finding is supported by substantial evidence.

### 3. The ALJ adequately explained the consideration she gave to Nurse Foster's opinion.

     The ALJ was required to "consider" Nurse Foster's opinion.  SSR 06-3p, 2006 SSR

LEXIS 5, at *17.  "[T]he case record should reflect the consideration of opinions from medical

sources who are not "acceptable medical sources" . . . .  Although there is a distinction between

what an adjudicator must consider and what the adjudicator must explain in the disability

determination or decision, the adjudicator generally should explain the weight given to opinions

from these 'other sources,' or otherwise ensure that the discussion of the evidence in the

determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's

reasoning, when such opinions may have an effect on the outcome of the case."  *Id*.  The ALJ did

consider the opinion of Nurse Foster, explained the weight given to her opinion, and explained the

1    ALJ's reasoning for that decision.  AR 30.

2                                    **CONCLUSION**

3            Ultimately, the ALJ is responsible for determining credibility and resolving conflicts in

4    medical testimony.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-1042 (9th Cir. 2008).  The issue of

5    disability is reserved to the Commissioner.  20 C.F.R. § 416.927(d)(1).  The ALJ did not err in

6    refusing to treat Nurse Foster as a treating physician, and the ALJ's decision to give Nurse

7    Foster's opinion limited weight is supported by substantial evidence.  The evidence in the record

8    supports the Commissioner's determination that Plaintiff is capable of performing past relevant

9    work, is not disabled under the Social Security Act, and is therefore ineligible for SSI benefits.

10           The Court denies Plaintiff's motion for summary judgment and grants Defendant's cross-

11   motion for summary judgment.

12           The Clerk of the Court is directed to close this case.

13

14           **IT IS SO ORDERED**.

15   Dated: August 20, 2013

16   _____

17                        NANDOR J. VADAS
                          United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California